BYRNE, Respondent, v. THE NORTHWESTERN LIFE INSURANCE COMPANY, Appellant.

(162 N. W. 387.)

(File No. 4044. Opinion filed April 30, 1917. Rehearing denied June 26, 1917.)

1. Mortgages—Suit to Cancel—Unauthorized Delivery of Mortgage—Fraud—Sufficiency of Evidence.

In a suit to cancel a note and mortgage which had been delivered by plaintiff to a third person with the understanding and upon the promise from the latter that they were not to be delivered to defendant company, or the mortgage filed for record or made effective until plaintiff had paid off and satisfied

a certain existing mortgage on the land, nor until he had talked the matter over with and obtained his wife's approval of the purchase of corporate stock in defendant company, which stock was to have been the consideration for the note and mortgage; defendant's president, although making no objection to plaintiff's request that the papers be returned, having falsely informed him that they had been deposited with insurance commissioner and could not be had; and then proposed that plaintiff take and hold the stock certificates until defendants would resell the stock, etc., which arrangement should not be a ratification of the prior transaction; to which arrangement plaintiff assented; whereupon plaintiff with that understanding, accepted and receipted for the stock certificates; held, that findings that the note and mortgage were procured by defendant from plaintiff through fraud, deceit and misrepresentation, were supported by a fair preponderance of evidence.

2.   Evidence—Suit to Cancel Mortgage—Judgment Roll, In Stockholder's Suit Against Present Defendant, Admissibility, Relevancy.

In a suit to cancel a note and mortgage because delivered on condition that they were not to be effective nor the mortgage recorded unless plaintiff thereafter paid an existing mortgage on the land and elected to accept stock in defendant corporation as consideration for the mortgage, held, that a judgment roll in a suit brought by a stockholder of defendant company against it and certain other stockholders, was incompetent and irrelevant evidence.   Held, further, that, the case having been tried to the court without a jury, said evidence could not have influenced the trial court, or prejudiced defendant's case.

3.   Mortgages—Suit to Cancel—Unauthorized Delivery of Mortgage—Subsequent Conditional Acceptance of Consideration of Mortgage, Whether a Ratification of Mortgage Delivery?

The unauthorized delivery of plaintiff's note and mortgage, by a third person to whom they had been conditionally delivered, to the mortgagee, is not converted into an absolute delivery thereof, nor was such conditional delivery ratified, by mortgagor's acceptance of stock in payment for which the note and mortgage were executed, where such action was because of the defendant corporation's false representations that plaintiff's mortgage had been deposited with the insurance commissioner, and that the stock certificate would be merely a receipt therefor until defendant could resell the stock; since a person becomes liable by reason of a ratification, only when the acts claimed to constitute the ratification were performed with intention of ratifying the act claimed to constitute the liability.

Appeal from Circuit Court, Faulk County. Hon. JOSEPH H. BOTTUM, Judge.

Action by William Byrne, against the Northwestern Life Insurance Company, for cancellation of a note and mortgage alleged to have been delivered through fraud, deceit, and misrepresentation. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*E. E. Kneedy,* and *Williamson & Williamson,* for Appellant. *Frank Turner,* for Respondent.

POLLEY, J. This action was brought for the purpose of canceling and annulling a certain note and mortgage executed by the plaintiff for the reason, as claimed by plaintiff, that said note and mortgage were procured from him by the defendant through the means of fraud, deceit, and misrepresentation.

It appears from the record that on or about the 18th day of September, 1912, one Bryant, who was the secretary of the defendant corporation, was engaged in selling the capital stock of said corporation. On the date above mentioned Bryant, accompanied by one Cornwall, called upon plaintiff. Cornwall was acquainted with plaintiff, and introduced Bryant. Bryant then proposed to sell plaintiff 20 shares of the capital stock of the defendant corporation at the fixed price of $4,000, and further proposed to accept in payment therefor plaintiff's note, secured by a mortgage on the quarter section of land described in plaintiff's amended complaint. Plaintiff testified that he at first refused to consider said proposition, but that finally he executed the note and mortgage in question and gave them to Cornwall, but with the understanding and upon the promise from Cornwall that said note and mortgage were not to be delivered to defendant company or the mortgage filed for record or to become effective until plaintiff had paid off and satisfied of record a certain mortgage then existing against said land, nor until he had talked the matter over with and obtained his wife's approval of the purchase of said stock and notified Cornwall thereof.

The evidence shows that the said mortgage was filed for record on the morning of the day after it was executed, but without the knowledge of plaintiff. The said stock was not issued or tendered to plaintiff, and nothing further appears to have been done in the matter except a conversation over the telephone be-

tween plaintiff and the said Bryant until some time during the following month of January, when plaintiff called upon said Cornwall at his office in Aberdeen to inform him that he (plaintiff) had decided not to take the said stock and requested a return of the said note and mortgage. He was unable to get any satisfaction from Cornwall or any information as to what had become of the said note and mortgage, and went to the register of deeds' office, where he learned for the first time that the said mortgage had been filed for record on the following morning after it had been executed. During the following month of March plaintiff wrote a letter to defendant company in which he told defendant that he had decided that he did not want the stock, and asked them to release and return to him the mortgage. Defendant did not reply to this letter or give it any attention whatever. On or about the 25th day of the follownig month of August plaintiff called at the defendant's office in Aberdeen for the purpose of securing his said note and mortgage and getting the matter cleared up.

Plaintiff testified that on that occasion he had a conversation with Mr. Wells, the president of the defendant company; that he explained to Mr. Wells the condition upon which he had placed the note and mortgage in Cornwall's possession; told him that he did not want the stock; that he had not yet paid off the old mortgage, and that he wished the note and mortgage returned to him; that said Wells made no objection to such request, but told plaintiff that his said note and mortgage had been deposited with the commissioner of insurance at Pierre, and that it would be almost impossible to get them, in fact, that they probably could not get them at all, and proposed to plaintiff that they let the matter stand as it was for the time being, and that he (Wells) would resell the stock and clear the matter up in that way, and that such an arrangement should not be a ratification of the prior transaction. To this arrangement plaintiff assented. Wells then suggested to plaintiff that he had better take the stock with him; that the stock certificate would be a receipt for the note and mortgage; and that defendant would call for the stock when it was needed. With this understanding, but without any intention on plaintiff's part of becoming a stockholder in the defendant company, plaintiff accepted and receipted for the certificate of stock. This receipt is dated

August 25, 1913. At the trial it appeared from the records in the office of the insurance commissioner at Pierre that plaintiff's note and mortgage had not been sent to that office up to August 25th, but that they were forwarded to that office on the 27th day of August, 1913, after the said conversation had taken place. Within a few days after said stock had been delivered to plaintiff defendant commenced writing letters to plaintiff dunning him for interest due on his note, notifying him of stockholders' meetings, and othewise treating him as a stockholder of the company. The trial court found the facts to be as narrated by plaintiff, and entered a decree accordingly.

[1] Defendant by its assignments questions the sufficiency of the evidence to support the findings of fact, but upon an examination of the evidence as set out in appellant's statement of the case we are satisfied that, if the evidence is competent, the findings are supported by a fair preponderance of the evidence.

[2] A large number of appellant's assignments are aimed at the rulings of the trial court in the admission and rejection of certain evidence. Only one of said assignments is relied upon or argued in appellant's brief, and the others will be deemed abandoned. At the trial the plaintiff offered, and the court admitted, in evidence the judgment roll in an action brought by a stockholder of the defendant company against the defendant and certain other stockholders. What the purpose of such evidence was or upon what theory of the case it was admitted in evidence we are at a total loss to know. It was not competent for any purpose, nor was it pertinent to any of the issues in the case: The action was brought and apparently decided upon the theory that the plaintiff had never delivered, nor authorized the delivery of, the note and mortgage to the defendant. The trial court found as a fact that, when the note and mortgage were placed in the hands of Cornwall, it was upon the express condition that they were not to be delivered to the defendant or the mortgage filed for record until plaintiff had paid off the prior mortgage, obtained his wife's approval of the purchase of the stock, and notified Cornwall thereof. This was never done. Therefore Cornwall never had authority to deliver the note and mortgage to defendant or to file the mortgage for record. Bryant, the secretary of the company, was present when said papers were placed in

Cornwall's hands, and knew the conditions upon which he took them. This being the case, the delivery of the note and mortgage by Cornwall and the acceptance thereof by defendant without instructions to that effect from plaintiff was unauthorized and fraudulent as to plaintiff and entitled him to their return and a cancellation of the mortgage on demand.

The judgment roll above mentioned could not possibly have thrown any light on this transaction, and, had the case been tried by a jury, the admisison of said judgment roll might have tended to prejudice defendant's case, but it is scarcely possible that such evidence could have influenced the trial court in the slightest degree.

[3] The only remaining question is: Did plaintiff by his subsequent acts ratify the delivery of the notes and mortgage to the defendant by Cornwall? Defendant contends that, when plaintiff accepted the certificate of stock on the 25th day of August, 1913, he thereby waived any conditions that might have existed prior thereto and ratified the execution and delivery of the note and mortgage. But a person becomes liable by reason of a ratification only when the acts claimed to constitute the ratification were done or performed with the intention of ratifying the act claimed to constitute the liability. This is not shown to have been done. The evidence shows, and the court found as a fact, that plaintiff took the stock with the understanding that it was to be resold by defendant and that he was to return it when needed, and not with any intention or expectation that he was to become the owner of the stock, or a stockholder in the defendant company. This did not constitute a ratification of the note and mortgage. Plaintiff had returned the certificate of stock to the defendant before the commencement of the action, and is entitled to have his note returned and the mortgage canceled of record.

This disposes of the whole case, and it is not necessary to determine the other questions presented by the record.

The judgment and order appealed from are affirmed.